IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GARTH CARTWRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | 1:21-cv-02182 |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL CREDIT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, GARTH CARTWRIGHT, by and through his attorneys, SMITHMARCO, P.C., and for his complaint against the Defendant, NATIONAL CREDIT SYSTEMS, INC., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq., and the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681, et. seq.

### II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., the FCRA 15 U.S.C. §1681, et. seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4. GARTH CARTWRIGHT, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Island Lake, County of Lake, State of Illinois.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to The Element Apartments.

6. The debt that Plaintiff allegedly owed The Element Apartments was for outstanding rent from an early termination, which was for the personal use of Plaintiff and/or used for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

9. NATIONAL CREDIT SYSTEMS, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Illinois. Defendant's principal place of business is located in the State of Georgia. Defendant is incorporated in the State of Illinois.

10. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

15. At all relevant times, credit reports as alleged in this pleading are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

IV. ALLEGATIONS

COUNT I: GARTH CARTWRIGHT v. NATIONAL CREDIT SYSTEMS, INC.
FOR VIOLATIONS OF THE FDCPA

16. At the time Plaintiff was a tenant in The Element Apartments, the unit in which Plaintiff resided became infested with bed bugs.

17. At the time Plaintiff was a tenant in The Element Apartments, Plaintiff had an infant child (approximately 20 months old) living in the apartment with him.

18. Prior to April 1, 2019, Plaintiff's infant child suffered multiple bites from the bed bugs, and developed bite marks and rashes.

19. Plaintiff notified the designated representative agent for The Element Apartments and provided photographic proof of the bites incurred by Plaintiff's child.

20. In response to Plaintiff's complaints, The Element Apartments notified Plaintiff that Plaintiff could vacate the premises without penalty.

21. Plaintiff and his family vacated the premises on or about May 1, 2019.

22. Thereafter, The Element Apartments assigned the debt in the amount of $8,263.32 to Defendant to collect.

23. The aforesaid balance consisted of unpaid rent for months that Plaintiff did not reside in the premises, as well as termination fees and costs.

24. Upon receipt of notice that Defendant was collecting the aforesaid debt, Plaintiff notified Defendant of the arrangement made with The Element Apartments, and provided proof of same.

25. Plaintiff provided information to Defendant that indicates that the information Defendant received from The Element Apartments was inaccurate and untrustworthy, on November 18, 2020, and again on January 7, 2021.

26. Defendant has reported the Debt to one or more "consumer reporting agency" as that term is defined by §1681a(f) of the Fair Credit Reporting Act, (hereinafter, FCRA). 15 U.S.C. §1681 *et seq.*

27. Notwithstanding Plaintiff's efforts and the information provided to Defendant, and despite the fact that Plaintiff did not owe the Debt because Plaintiff was promised he could leave without penalty, Defendant reported the Debt as being owed by Plaintiff to one or more credit reporting agencies multiple times, including in December 2020.

28. Defendant's failure to comply with §1692e(8) therefore was deceptive and misleading since, among other things, it deprived future users of Plaintiff's consumer reports of essential information relevant to their assessment of Plaintiff's credit worthiness and of Plaintiff's eligibility for other benefits for which the report may be employed and adversely impacted Plaintiff's credit score under certain credit scoring systems.

29. In its attempts to collect the debt allegedly owed by Plaintiff to The Element Apartments, Defendant violated the FDCPA, 15 U.S.C. §1692 in one or more of the following ways:

    a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

b. Communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. §1692e(8);

c. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

30. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

### COUNT II: GARTH CARTWRIGHT v. NATIONAL CREDIT SYSTEMS, INC. FOR VIOLATIONS OF THE FCRA

31. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

32. At all relevant times, credit reports as alleged in this pleading are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

33. Defendant has been providing derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to various credit reporting agencies, as that term is defined by 15 U.S.C. 1681a(f).

34. Defendant is aware that the credit reporting agencies to which they are providing this information are going to disseminate this information to various other persons or parties who will be reviewing this information for the purpose of extending credit, insurance or employment.

35. The inaccurate information of which Plaintiff complains is an account, or trade-line, that reflects Plaintiff's history of credit with the Defendant.

36. Despite the foregoing, Defendant has disseminated information that the account is in collections with a balance of $8,263 owed.

37. The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

38. The credit reports have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

39. On February 23, 2021, Plaintiff disputed the inaccurate information with the credit reporting agencies by written communication to its representatives and by following the aforementioned reporting agency's established procedure for disputing consumer credit information.

40. Furthermore, Plaintiff enclosed with his written dispute to Defendant documents and other information that either proved that the disputed information contained within his credit report was inaccurate or, at the very least, provided evidence that supported Plaintiff's contentions that the disputed information was inaccurate.

41. Upon information and belief, within five (5) days of Plaintiff disputing the inaccurate information with Trans Union, Trans Union notified Defendant of Plaintiff's dispute and the nature of the dispute.

42. Upon information and belief, within five (5) days of Plaintiff disputing the inaccurate information with Trans Union, Defendant received notification from Trans Union of Plaintiff's dispute and the nature of the dispute.

43. Upon information and belief, Defendant received from Trans Union, notice of Plaintiff's dispute by Automated Consumer Dispute Verification Notice.

44. Upon information and belief, Defendant received from Trans Union additional information Trans Union received from Plaintiff relative to additional evidence supporting the dispute.

45. Defendant then and there owed to Plaintiff a duty to assist the credit reporting agency in a re-investigation into the disputed facts that are being reported about Plaintiff.

46. Notwithstanding Plaintiff's efforts and Defendant's duties, Defendant continued publishing the inaccurate information and Defendant continued to publish and disseminate such inaccurate information to other credit reporting agencies.

47. Despite Plaintiff's efforts to date, Defendant has nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, has failed to remove the inaccurate information, has failed to note the disputed status of the inaccurate information and has continued to report the derogatory inaccurate information about Plaintiff.

48. Plaintiff has been damaged, and continues to be damaged, in the following ways:

    a. Denial of credit by Quick Mortgage Corp and an opportunity to finance a home;

    b. Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report;

    c. Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people both known and unknown;

    d. Denial of credit, loans, financing and/or other damages, not yet known by Plaintiff; and,

    e. Decreased credit score which may result in inability to obtain credit on future attempts.

49. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant herein.

50. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

51. Defendant violated sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. §1681s-2(b):

   a. Willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

   b. Willfully and negligently failing to review all relevant information concerning Plaintiff's account provided to this Defendant;

   c. Willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

   d. Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

   e. Willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning the Plaintiff to credit reporting agencies and other entities despite knowing that said information was inaccurate; and,

   f. Willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2.

52. Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in causing the injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory, actual and punitive damages, along with attorneys' fees and costs, as well as such other relief permitted by law.

### V. JURY DEMAND

53. Plaintiff hereby demands a trial by jury on all issues so triable.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GARTH CARTWRIGHT, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

   a. All actual compensatory damages suffered;

      b.      Statutory damages of $1,000.00 for Defendant's violation of the FDCPA;

      c.      Statutory damages of $1,000.00 for Defendant's violation of the FCRA;

      d.      Punitive damages;

      e.      Plaintiff's attorneys' fees and costs; and,

      f.      Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**GARTH CARTWRIGHT**

**By:**   s/ David M. Marco
        Attorney for Plaintiff

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:   (312) 546-6539
Facsimile:    (888) 418-1277
E-Mail:       dmarco@smithmarco.com